## UNITED STATES DISTRICT COURT
### DISTRICT OF SOUTH DAKOTA
### SOUTHERN DIVISION

| | |
|---|---|
| League of Women Voters of South Dakota, League of Women Voters of the United States, Susan Randall, and Kathryn Fahey,<br><br>       Plaintiffs,<br><br>v.<br><br>South Dakota Governor Kristi L. Noem, in her official capacity, South Dakota Attorney General John Doe, in his official capacity, and South Dakota Secretary of State Steve Barnett, in his official capacity,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)   Case No. __22-4085_____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiffs, for their Complaint against Defendants Governor Kristi L. Noem, in her official capacity as Governor of South Dakota, Attorney General John Doe, in his official capacity as Attorney General of South Dakota, and Secretary of State Steve Barnett, in his official capacity as Secretary of State of South Dakota, allege as follows:

## NATURE OF THE ACTION

1.      This is an action to enforce rights at the very core of protected political speech: the ability of citizens to consider and vote on ballot measures, sometimes called ballot initiatives, concerning critical issues of state government. The essential step in a successful ballot measure, and indeed a healthy democracy, is engaging with and educating voters. In South Dakota and many other states throughout the United States, an important component of this engagement is through "petition circulators" who contact voters, often by going door-to-door, to request their consideration—up or down—of proposed ballot measures. South Dakota 2020 Senate Bill 180

("SB180") would limit petition circulators to residents of South Dakota who have lived in the state for more than 30 days, severely restricting voters' access to ballot measures and voter-engagement organizations' ability to engage in political activity. Plaintiffs here—individual South Dakotans, the League of Women Voters of South Dakota ("LWVSD"), and the League of Women Voters of the United States ("LWVUS") (collectively, "the League"), seek to preserve these crucial rights by challenging SB180 as violating the First and Fourteenth Amendments to the United States Constitution, as enforced by 42 U.S.C. § 1983, and rights guaranteed by Article VI §§ 18 and 19 of the South Dakota Constitution.

2.      The League is committed to an informed and engaged electorate in South Dakota and throughout the nation. Nonpartisan in everything that it does, the League promotes involvement in the political process for every citizen through its local, statewide, and national programs. Members of the League travel across state lines in furtherance of this mission and share resources among the chapters through their mutually supportive work in a number of areas, including sponsoring candidate forums, providing educational materials, and assisting in the circulation of ballot measures. SB180 places a burden on the League and its members because it limits their ability to share information and pool resources to assure the dissemination of political information across all political spectrums.

3.      The First Amendment to the United States Constitution guarantees all citizens freedom of speech and the right to petition the Government for a redress of grievances. Article VI of the South Dakota Constitution absolutely guarantees freedom of speech in this State and that "[t]he right of petition, and of the people peaceably to assemble to consult for the common good and make known their opinions, shall never be abridged." In South Dakota, "[n]o law shall be passed granting to any citizen, class of citizens or corporation, privileges or immunities which

upon the same terms shall not equally belong to all citizens or corporations." That is because "[a]ll political power is inherent in the people, and all free government is founded on their authority, and is instituted for their equal protection and benefit, and they have the right in lawful and constituted methods to alter or reform their forms of government in such manner as they may think proper."

4.     Petition circulation is "core political speech" and the "First Amendment protection for such interaction . . . is 'at its zenith.'" *Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 186 (1999) (quoting *Meyer v. Grant*, 486 U.S. 414, 422, 425 (1988)). Article VI of the South Dakota Constitution provides that "the state of South Dakota is an inseparable part of the American Union and the Constitution of the United States is the supreme law of the land." South Dakota, however, has so restricted the ways in which election petitions may be circulated to place ballot measures on statewide election ballots that it infringes upon the core political speech of South Dakota citizens in violation of the First Amendment to the Constitution of the United States and Article VI of the Constitution of South Dakota.

5.     South Dakota has a proud history of ballot measures. In 1898, South Dakota was the first state in the union to adopt the initiative process; similar processes now are in place in 23 other States, allowing citizens to place proposed statutes and, in some states, constitutional amendments on the ballot. Generally, the process includes these steps:

- Preliminary filing of a proposed petition with a designated State official;

- Reviewing the petition for conformance with statutory requirements (and, in several states, a review of the language of the proposal);

- Preparing a ballot title and summary;

- Circulating the petition to obtain the required number of signatures of registered voters;

3

- Submitting the petitions to the State official who must verify the number of signatures; and

- If enough valid signatures are obtained, the question goes on the ballot (or, in some states, the question is sent to the Legislature).

**6.** Ballot measures are a crucial part of citizen participation in government. In recent years, ballot measures have sparked increased participation in the electoral process and allowed the people of a State to speak directly on critical questions like Medicaid expansion and legalization of marijuana, both of which are current issues in South Dakota. Other issues that have been the subject of ballot measures in other states include the establishment of new minimum-wage levels, restoration of voting rights to people with felony convictions, imposition of stricter voter ID requirements, and even changes to voter initiative rules themselves. In other examples, several independent redistricting commissions were considered and established through ballot initiatives.

7. For each of these measures, the number of signatures obtained to support the ballot measure was the critical step to placing the measure on the ballot. Indeed, this is true for all ballot measures, which makes the ability to reach out and educate voters to consider ballot measures vital to preserving our fundamental rights and maintaining a healthy democracy. The best way to obtain signatures is for "petition circulators" to contact voters, often by going door-to-door, to solicit their consideration—up or down—of the proposed ballot measure.

8. By severely limiting who can be petition circulators in South Dakota in ways that prevent knowledgeable, nonpartisan people from other states to come to South Dakota to educate South Dakota voters—even prohibiting some eligible voters from circulating petitions in the State—SB180 places burdens on voters that violate the First Amendment to the United States

Constitution and Article VI § 18 of the South Dakota Constitution. As detailed below, SB180 stands in the way of the right of citizens to assemble to petition the government, makes unlawful distinctions between residents of this State and other states, and restricts the freedom of speech that is central to the American way of life. This Court should declare the restrictions of SB180 invalid, strike down the statute and enjoin South Dakota officials from seeking to enforce its terms.

9.      Specifically, the First Amendment to the United States Constitution, made applicable to the several States through the Fourteenth Amendment to the United States Constitution, provides that the Government "shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

10.     Article VI § 18 of the South Dakota Constitution provides that "[n]o law shall be passed granting to any citizen, class of citizens or corporation, privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations."

11.     Article VI § 19 of the South Dakota Constitution provides that "[e]lections shall be free and equal, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage."

12.     Article VI § 26 of the South Dakota Constitution provides that "[a]ll political power is inherent in the people, and all free government is founded on their authority, and is instituted for their equal protection and benefit, and they have the right in lawful and constituted methods to alter or reform their forms of government in such manner as they may think proper."

13.     South Dakota 2020 Senate Bill 180 ("SB180"), amended the definition of "petition circulator" to "a person who is **a resident of this state for at least thirty days prior to acting as**

**a petition circulator**, is at least eighteen years of age, and who, for pay or as a volunteer, circulates petitions for the purpose of placing ballot measures on any statewide election ballot." SB 180 § 2-1-1.3(2) (emphasis added). South Dakota's residency requirement for petition circulators violates rights guaranteed by the First and Fourteenth Amendments to the United States Constitution, as enforced by 42 U.S.C. § 1983, and rights guaranteed by Article VI §§ 18 and 19 of the South Dakota Constitution. Accordingly, Plaintiffs, on their own behalf and on behalf of persons similarly situated, bring this action for declaratory and injunctive relief prohibiting state officials from enforcing SB180 now and in the future.

## JURISDICTION AND VENUE

14.    This action arises under the First and Fourteenth Amendments to the United States Constitution. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331.

15.    Plaintiffs are authorized by 42 U.S.C. § 1983 to bring this action to redress the Constitutional injuries they have sustained by reason of the operation and enforcement of SB180 by the Defendants.

16.    Plaintiffs' claims under Article VI of the South Dakota Constitution are within this Court's pendent jurisdiction to hear "all other claims that are so related . . . that they form part of the same case or controversy," 28 U.S.C. § 1367(a), and that "arise[] from the same set of operative facts." *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966).

17.    This Court has authority to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202.

18.    Venue is proper in the District of South Dakota pursuant to 28 U.S.C. § 1391(b).

## PARTIES

19.    Plaintiff League of Women Voters of South Dakota ("LWVSD") and League of Women Voters of the United States ("LWVUS") (collectively, LWVSD and LWVUS are referred to as "the League") are grassroots, nonpartisan, community-based political organizations dedicated to encouraging informed and active participation in government and the political process through advocacy and education.

20.    The LWVSD has approximately 138 members in the State of South Dakota. LWVSD is proud to be nonpartisan, neither supporting nor opposing candidates or political parties at any level of government, but always working on vital issues of concern to members and the public. LWVSD's programs supporting its mission to empower voters, defend democracy, and provide fair access to the ballot, have included: registering voters; organizing and leading local and state ballot issue education programs; organizing non-partisan candidate forums; sponsoring legislative coffees throughout the state; running the nonpartisan VOTE411.org website for South Dakota; and working with federal district courts to register newly naturalized citizens.

21.    The LWVUS was founded in 1920 as an outgrowth of the struggle to win voting rights for women. LWVUS is organized in more than 850 communities and exists in every state with more than 500,000 members and supporters nationwide. Drawing on its nationwide reach, the League is able to provide resources in sparsely populated states where local chapters alone do not have the capacity themselves to act in carrying out the League's mission. The work of the League is done primarily by volunteers who work together tirelessly across state lines to help accomplish their goals. LWVUS supports states' interstate coordination and connects states attempting to do mission work but need additional resources or capacity. Laws that make such interstate cooperation more difficult, or like SB180, actually prohibit such interstate cooperation,

7

undercut the work of the League and make it impossible for League members to participate fully in the political process.

22.     One of the League's primary goals is to promote government across the nation that is representative, accountable, responsive, and that ensures opportunities for effective and inclusive voter participation in government decision-making. A bedrock principle of the League is the "one person one vote" guarantee of *Reynolds v. Sims*, 377 U.S. 533 (1964).

23.     In addition to sponsoring candidate forums and debates, including Presidential Debates in Presidential election years, the League hosts hundreds of events and programs every year to educate voters across the country. The League distributes millions of educational materials about state and local elections.

24.     The League's members in South Dakota and members from other States have participated in securing signatures for candidacy petitions and initiative and referendum petitions in South Dakota in the past and are prepared to do so in the future. In their educational efforts across the States, state and local chapters of the League call upon the expertise provided by LWVUS to provide nonpartisan materials about measures proposed for voter consideration. Members of the various League chapters travel across State lines to assist each other in accomplishing the mission of an educated electorate. Specifically, the League is prepared to continue to educate voters about ballot measures in South Dakota and to draw upon volunteers from inside and outside South Dakota to do so.

25.     The League has standing to bring this action both on its own in furtherance of its organizational goals and because its members would otherwise have standing to sue in their own right. The interests that this action seeks to protect are germane to the League's purpose of promoting government across the nation that is representative, accountable, responsive, and that

ensures opportunities for effective and inclusive voter participation in government decision-making. Neither the claims asserted nor the relief requested in this action require the participation of individual League members, although two members have also brought individual claims in this action.

26.     Plaintiff Susan Randall is a former South Dakota resident and a member of the League. Plaintiff Randall still owns property in South Dakota and travels there two to three times a year. But for the restrictions imposed on circulating petitions by SB180, when Plaintiff Randall comes back to South Dakota, she would volunteer for LWVSD to help circulate petitions, as she did when she was a resident of the state.

27.     Plaintiff Kathryn "Katie" Fahey is Executive Director of The People and a member of the League. Plaintiff Fahey has worked with the League on ballot initiatives across the country, using The People's network to locate volunteers to circulate petitions for ballot initiatives and to provide training to local volunteer circulators. She would do the same in South Dakota but for the restrictions imposed by SB180.[1]

28.     Defendant Kristi L. Noem is the Governor of South Dakota and is sued in her official capacity. Defendant Noem signed SB180 into law.

29.     Defendant John Doe is the Attorney General of South Dakota and is sued in his official capacity. Defendant John Doe is responsible for defending the laws of South Dakota, including SB 180.[2]

---

[1] Plaintiff Randall and Plaintiff Fahey are referred to collectively as the "Individual Plaintiffs."
[2] Plaintiffs will seek leave to substitute the person appointed to the office of Attorney General of South Dakota for John Doe, also sued only in the Attorney General's official capacity and not personally, when the office is once again filled.

30.    Steve Barnett is the Secretary of State of South Dakota and is sued in his official capacity. Defendant Barnett oversees the South Dakota Division of Elections.

31.    All Defendants enforce SB180, and unless restrained, will act together to enforce SB180 to restrict the people from circulating petitions in lawful and constituted methods to alter or reform their forms of government in South Dakota.

## STATUTORY BACKGROUND

32.    South Dakota defines "petition circulator" as "a resident of the State of South Dakota as defined under § 12-1-4, who is at least eighteen years of age who circulates nominating petitions or other petitions for the purpose of placing candidates or issues on any election ballot." SDCL § 12-1-3(11). "Residence" is defined as "the place in which a person has fixed his or her habitation and to which the person, whenever absent, intends to return." SDCL § 12-1-4. Until 2020, and since 2020 in meaningful ways that are at odds with SB180, South Dakota allows residents to establish residence after one day. *See, e.g.*, SDCL 12-1-4.

33.    In 2020, the South Dakota Legislature passed, and Defendant Governor Kristi Noem signed into law, SB180 amending SDCL § 2-1-1.3 to define "petition circulator" as "a person who is a resident of this state for at least thirty days prior to acting as a petition circulator, is at least eighteen years of age, and who, for pay or as a volunteer, circulates petitions for the purpose of placing ballot measures on any statewide election ballot." SB 180 § 2-1-1.3(2).

34.    SB180 imposes a 30-day residency requirement for petition circulators in South Dakota who seek signatures on petitions from voters who would lawfully vote in South Dakota on ballot measures put before the voters of South Dakota.

35.    SB180's residency requirement applies to candidacy petitions and to initiative and ballot measures including referendum petitions.

36.     Currently, the official website of the Secretary of State shows that there have been ballot measures filed to amend Article XI of the South Dakota Constitution, to amend the South Dakota Constitution to amend Medicaid eligibility, an initiated measure to the same effect, and an initiated measure to legalize possession, use, and distribution of marijuana.[3] Other initiated measures that have been filed include different approaches to expand Medicaid eligibility, institute a new "top two" primary system, and establish a redistricting commission.[4]

37.     The circulation of petitions like those enumerated above and on similar issues important to the governance of this State is core political speech protected by the United States Constitution and the South Dakota Constitution.

38.     The residency requirement imposed by SB180 reduces the pool of circulators available to support candidates or issue campaigns.

39.     The residency requirement imposed by SB180 to circulate petitions to voters stands in stark contrast to the residency requirement to vote on such measures. A voter may reside in South Dakota for one day and be eligible to vote, provided that the voter represents that they intend to reside in South Dakota. SDCL 12-1-4.

40.     This leads to the anomalous situation in which a voter can arrive in South Dakota and immediately sign a ballot measure petition, but that same voter may not circulate a petition to place a matter on the ballot.

41.     SB180 also does not accomplish a legitimate governmental purpose. Under SB180, a resident is not required to declare an intention to remain in the State longer than 30 days, creating the anomalous situation in which a South Dakota resident eligible to vote in South Dakota under

---

[3] South Dakota Secretary of State, *Elections & Voting*, SDSOS.GOV, https://sdsos.gov/elections-voting/upcoming-elections/general-information/2022-ballot-questions.aspx (last visited June 15, 2022).
[4] *Id.*

SDCL 12-1-4 cannot circulate a ballot initiative for signature, while a visitor who remains in the State for 30 days but intends to depart shortly thereafter is allowed to circulate ballot initiatives, either as a "volunteer circulator" or as a "paid circulator." On its face, SB180 deprives the first group of South Dakota citizens the privileges and immunities afforded voting residents while allowing non-citizens who remain in the State for 30 days to affect the course of State government.

42.    According to the Heritage Foundation, there have been just three cases of ballot petition fraud in South Dakota over the last 20 years.[5]

43.    SB180 places a severe burden on the individual Plaintiffs' First and Fourteenth Amendment rights by making it more difficult for voters to engage with political issues and candidates, receive political messages and education, associate with voter engagement groups for the purpose of political activity, and gain access to the ballot. SB180 places a severe burden on the League's First Amendment rights by making it more difficult for voter engagement organizations to engage with, associate with, and educate voters on political issues through ballot measures. Ballot measures also are a means for citizens to associate around common political views to elicit political change and to gain access to the ballot, rights that are enshrined in the rich heritage of constitutional protections in this State. The burden imposed by SB180 confounds the ability of citizens of South Dakota to effect the changes in Government guaranteed them by the United States and South Dakota Constitutions.

## NEED FOR RELIEF

44.    Specifically, the League and the Individual Plaintiffs seek to secure signatures for ballot measures, including initiative and referendum petitions, for upcoming South Dakota elections. The number of signatures required is five percent of the total vote for governor in the

---

[5] The Heritage Foundation, *Election Fraud Cases*, https://www.heritage.org/voterfraud/search?state=SD (last visited June 15, 2022).

last gubernatorial election. For 2022, the number needed is 16,961 signatures for an initiated measure petition, 16,961 signatures for a referred law petition, and 33,921 signatures for an initiated constitutional amendment petition. The League estimates that the number of volunteers needed to generate the required petition signatures would be roughly 1,000 volunteers.

45.    In the League's experience, there are not enough in-state volunteers in South Dakota for the League to amass the required signatures on a petition in the next election cycle. In the most recent election cycle, the League was unsuccessful in submitting a ballot question for an initiated constitutional amendment on behalf of voters in South Dakota, in material part because SB180 prevented the League from using out-of-state volunteers to assist with circulation of ballot initiatives, imposing upon the League and its members the higher cost of hiring "resident" circulators as "paid circulators" who had resided in South Dakota for 30 days because of the residency requirement of SB180.

46.    The costs for the League to hire paid circulators for ballot measures in South Dakota is unduly prohibitive. A recent quote the League received from an outside vendor estimated the cost for a 30,000-signature petition to be between $425,029 and $544,909. The cost is multiplied with each ballot measure, imposing an unreasonable and impermissible cost on the exercise of protected Constitutional rights.

47.    There are out-of-state members of the League as well as other volunteers, including the Individual Plaintiffs, who are willing and able to come to South Dakota to circulate petitions, but they are now barred from doing so under SB180. Recently, Plaintiff Susan Randall, a Michigan resident, South Dakota property owner, and member of the League of Women Voters, came to South Dakota for two weeks in 2021. She and her husband wanted to assist the League with circulation of an initiated constitutional amendment while she was in South Dakota. Because of

SB180's residency requirement, however, Plaintiff Randall was not able to help circulate the petition while she was in state.

48.    Plaintiff Fahey, a Michigan resident and member of the League of Women Voters, was also ready to tap into her network of over 14,000 volunteers to organize a group to come to South Dakota in 2021 to offer training to local volunteers and to help circulate petitions for the initiated constitutional amendment. Plaintiff Fahey and her organization, The People, have done this successfully in several other states. Because of SB180's residency requirement, however, Plaintiff Fahey was not able to come to South Dakota to circulate petitions herself nor was she able to recruit volunteers to go to South Dakota to do the same.

49.    While the Eighth Circuit upheld as constitutional a North Dakota residency requirement for petition circulators, there was a lack of evidence in the record as to the cost and burden the requirement placed on the plaintiffs, and the court did not specifically determine whether the requirement was narrowly tailored. *See Initiative & Referendum Inst. v. Jaeger*, 241 F.3d 614, 616–17 (8th Cir. 2001). SB180 is similar to the invalid residency requirement in the neighboring state of Nebraska, which failed to pass constitutional muster because of the burden, including increased cost, limited resources, and reduction of available pool of circulators, imposed on the electorate by operation of the statute. *See Citizens in Charge v Gale*, 810 F. Supp. 2d 916, 926–27 (D. Neb. 2011). Further, while the prevention of election fraud was foundational to the *Jaeger* decision, there is no evidence of such fraud in South Dakota to justify SB180's aggressive restriction on First Amendment speech.

50.    The First Amendment prohibits government regulation that would make it "more challenging to circulate petitions and collect the required number of signatures . . . ." *SD Voice v.*

*Noem*, No. 1:19-CV-01017-CBK, 2021 WL 3861795, at *3 (D.S.D. Aug. 30, 2021). Yet that is precisely what SB180 does.

51.    The residency requirement imposed by SB180 is not justified by a sufficiently weighty state interest.

52.    The residency requirement imposed by SB 180 is not narrowly tailored to advance a compelling state interest.

## **INJUNCTIVE AND DECLARATORY RELIEF TO REDRESS THE INJURY**

### **(28 U.S.C. §§ 2201 and 2202)**

53.    An actual and justiciable controversy exists as to which the Plaintiffs require a declaration of their rights.

54.    Defendants' enforcement of SB180 places a severe burden on the Plaintiffs' First and Fourteenth Amendment rights and draws an unlawful distinction between citizens of South Dakota and citizens of other States, as well as an unlawful distinction among citizens of South Dakota, depriving recent residents of South Dakota from expressing their political views through circulation of petitions from the privileges and immunities enjoyed by citizens of South Dakota who have resided in the State for longer than 30 days.

55.    Unless the requested injunctive relief issues, the Defendants will continue to infringe the constitutional rights of Plaintiffs and other voters through their enforcement of SB180.

56.    The Plaintiffs have no adequate remedy at law for the Defendants' violations of their rights.

57.    The Plaintiffs are suffering irreparable harm as a result of the Defendants' violations of the law and Constitution and the harm will continue unless declared unlawful and enjoined by this Court.

## COUNT ONE

**(Facial Violation of the First and Fourteenth Amendments to the United States Constitution)**

58.    Plaintiffs incorporate by reference and reallege each and every allegation contained above as though fully set forth herein.

59.    The First and Fourteenth Amendments guarantee Plaintiffs' right to engage in political speech, of which petition circulation is at the core.

60.    The residency requirement of SB180 places a significant, tangible burden on Plaintiffs' right to engage in core political speech.

61.    The residency requirement of SB180 on its face violates the First and Fourteenth Amendments to the U.S. Constitution.

## COUNT TWO

**(Violation of the First and Fourteenth Amendments to the United States Constitution as Applied to Plaintiffs)**

62.    Plaintiffs incorporate by reference and reallege each and every allegation contained above as though fully set forth herein.

63.    The First and Fourteenth Amendments guarantee Plaintiffs' right to engage in political speech, of which petition circulation is at the core.

64.    The residency requirement of SB180 places a significant, tangible burden on Plaintiffs' right to engage in core political speech.

65.    The residency requirement of SB180 violates the First and Fourteenth Amendments to the U.S. Constitution.

66.    Defendants' enforcement of the residency requirement of SB180 places significant, tangible burden on Plaintiffs' right to engage in core political speech.

16

67.    Defendants' enforcement of the residency requirement of SB180 violates the First and Fourteenth Amendments to the United States Constitution.

68.    Defendants lack any compelling interest to justify enforcement of the residency requirement of SB180 in contrast to the significant burden it places on Plaintiffs and other similarly situated persons.

69.    Unless and until enjoined by this Court, Defendants will continue to enforce the residency requirement of SB180, in violation of the First and Fourteenth Amendments to the U.S. Constitution.

## COUNT THREE

### (Facial Violation of Article VI § 18 of the South Dakota Constitution)

70.    Plaintiffs incorporate by reference and reallege each and every allegation contained above as though fully set forth herein.

71.    Article VI § 18 of the South Dakota Constitution provides that "[n]o law shall be passed granting to any citizen, class of citizens or corporation, privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations."

72.    The residency requirement of SB180 places a significant and unnecessary burden on Plaintiffs and similarly situated voters.

73.    The residency requirement of SB180 arbitrarily discriminates between in-state and out-of-state residents to the detriment of Plaintiffs and all South Dakota voters.

74.    The residency requirement of SB180 is not justified by a sufficiently weighty state interest.

75.    The residency requirement of SB180 is not narrowly tailored to advance a compelling state interest.

17

76.    The residency requirement of SB180 on its face violates Article VI § 18 of the South Dakota Constitution.

## COUNT FOUR

### (Violation of Article VI § 18 of the South Dakota Constitution as Applied to Plaintiffs)

77.    Plaintiffs incorporate by reference and reallege each and every allegation contained above as though fully set forth herein.

78.    Article VI § 18 of the South Dakota Constitution provides that "[n]o law shall be passed granting to any citizen, class of citizens or corporation, privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations."

79.    The residency requirement of SB180 places a significant and unnecessary burden on Plaintiffs and similarly situated voters.

80.    The residency requirement of SB180 arbitrarily discriminates between in-state and out-of-state residents to the detriment of Plaintiffs and all South Dakota voters.

81.    The residency requirement of SB180 is not justified by a sufficiently weighty state interest.

82.    The residency requirement of SB180 is not narrowly tailored to advance a compelling state interest.

83.    Defendants' enforcement of the residency requirement of SB180 as applied to Plaintiffs violates Article VI § 18 of the South Dakota Constitution.

84.    Unless and until enjoined by this Court, Defendants will continue to enforce the residency requirement of SB180, in violation of Article VI § 18 of the South Dakota Constitution.

## COUNT FIVE

### (Facial Violation of Article VI § 19 of the South Dakota Constitution)

85.    Plaintiffs incorporate by reference and reallege each and every allegation contained above as though fully set forth herein.

86.    Article VI § 19 of the South Dakota Constitution provides that "[e]lections shall be free and equal, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage."

87.    The residency requirement of SB180 places a significant and unnecessary burden on Plaintiffs and similarly situated voters.

88.    The residency requirement of SB180 arbitrarily discriminates between in-state and out-of-state residents to the detriment of Plaintiffs and all South Dakota voters.

89.    The residency requirement of SB180 is not justified by a sufficiently weighty state interest.

90.    The residency requirement of SB180 is not narrowly tailored to advance a compelling state interest.

91.    The residency requirement of SB180 on its face violates Article VI § 19 of the South Dakota Constitution.

## COUNT SIX

**(Violation of Article VI § 19 of the South Dakota Constitution as Applied to Plaintiffs)**

92.    Plaintiffs incorporate by reference and reallege each and every allegation contained above as though fully set forth herein.

93.    Article VI § 19 of the South Dakota Constitution provides that "[e]lections shall be free and equal, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage."

94.    The residency requirement of SB180 places a significant and unnecessary burden on Plaintiffs and similarly situated voters.

95.    The residency requirement of SB180 arbitrarily discriminates between in-state and out-of-state residents to the detriment of Plaintiffs and all South Dakota voters.

96.    The residency requirement of SB180 is not justified by a sufficiently weighty state interest.

97.    The residency requirement of SB180 is not narrowly tailored to advance a compelling state interest.

98.    Defendants' enforcement of the residency requirement of SB180 as applied to Plaintiffs violates Article VI § 19 of the South Dakota Constitution.

**99.**    Unless and until enjoined by this Court, Defendants will continue to enforce the residency requirement of SB180, in violation of Article VI § 19 of the South Dakota Constitution.

## **REQUEST FOR RELIEF AS TO ALL COUNTS**

WHEREFORE, Plaintiffs respectfully request that this Court:

a.    Enter a declaratory judgment that the residency requirement of SB180 on its face violates the First and Fourteenth Amendments to the United States Constitution;

b.    Enter a declaratory judgment that the residency requirement of SB180 as applied violates the First and Fourteenth Amendments to the United States Constitution;

c.    Enter a declaratory judgment that the residency requirement of SB180 violates Article VI § 18 of the South Dakota Constitution;

d.    Enter a declaratory judgment that the residency requirement of SB180 violates Article VI § 19 of the South Dakota Constitution;

e.    Enjoin the Defendants from enforcing the residency requirement of SB180;

f.   Award the Plaintiffs the cost of this action together with their reasonable attorneys'
     fees and expenses pursuant to 52 U.S.C. § 10310(e) and 42 U.S.C. § 1988; and

g.   Retain jurisdiction of this action and grant the Plaintiffs such other relief which may in
     the determination of this Court be necessary and proper.


                                    **League of Women Voters of South Dakota,
                                    League of Women Voters of the United
                                    States, Susan Randall, and Kathryn Fahey**


Dated: June 28, 2022                 By:  /s/ *Pete Heidepriem*
                                            One of their Attorneys

                                    Scott N. Heidepriem
                                    Pete Heidepriem
                                    Heidepriem, Purtell, Siegel, Hinrichs
                                    101 West 69th Street, Suite 105A
                                    Sioux Falls, SD 57108
                                    (605) 252-9277
                                    pete@hpslawfirm.com

                                    Michael Dockterman*
                                    Cara Lawson*
                                    Amartya Bagchi*
                                    Azar Alexander*
                                    Steptoe & Johnson LLP
                                    227 West Monroe, Suite 4700
                                    Chicago, IL 60606
                                    (312) 577-1300
                                    mdockterman@steptoe.com
                                    clawson@steptoe.com
                                    abagchi@steptoe.com
                                    aalexander@steptoe.com

                                    Celina Stewart*
                                    Caren E. Short*
                                    League of Women Voters
                                      of the United States
                                    1233 20th Street NW, Suite 500
                                    Washington, DC 20036
                                    (202) 429-1965

cstewart@lwv.org
cshort@lwv.org

*Pro hac vice* applications forthcoming

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
League of Women Voters of South Dakota, League of Women Voters of the United States, Susan Randall, and

**DEFENDANTS**
South Dakota Governor Kristi L. Noem, in her official capacity, South Dakota Attorney General John Doe, in his

**(b)** County of Residence of First Listed Plaintiff   Minnehaha County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Pennington County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Scott N. Heidepriem
Pete Heidepriem
Heidepriem, Purtell, Siegel, Hinrichs

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                    Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | **PERSONAL INJURY** ☐ 365 Personal Injury - Product Liability | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 720 Labor/Management Relations | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 751 Family and Medical Leave Act | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☒ 441 Voting | ☐ 463 Alien Detainee | ☐ 790 Other Labor Litigation | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | ☐ 791 Employee Retirement Income Security Act | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 550 Civil Rights | | |
| | | ☐ 555 Prison Condition | **IMMIGRATION** | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 462 Naturalization Application | |
| | | | ☐ 465 Other Immigration Actions | |

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation - Transfer   ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1331, 28 U.S.C. § 1983, 28 U.S.C. § 1367(a)
Brief description of cause:
Constitutional challenge to residency requirement of SB 180

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

**VIII. RELATED CASE(S) IF ANY**
*(See instructions)*
JUDGE _____    DOCKET NUMBER _____

DATE
06/28/2022

SIGNATURE OF ATTORNEY OF RECORD
/s/ Pete Heidepriem

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____