UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF SOUTH DAKOTA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, SUSAN RANDALL, KATHRYN FAHEY,<br><br>Plaintiffs,<br><br>vs.<br><br>KRISTI L. NOEM, SOUTH DAKOTA GOVERNOR, IN HER OFFICIAL CAPACITY; JOHN DOE, SOUTH DAKOTA ATTORNEY GENERAL, IN HIS OFFICIAL CAPACITY; STEVE BARNETT, SECRETARY OF STATE, IN HIS OFFICIAL CAPACITY; AND MARK VARGO, SOUTH DAKOTA ATTORNEY GENERAL, IN HIS OFFICIAL CAPACITY;<br><br>Defendants. | 4:22-CV-04085-RAL<br><br><br>OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES AND IN THE ALTERNATIVE, MOTION FOR JUDGMENT ON THE PLEADINGS AS TO AFFIRMATIVE DEFENSES |

Plaintiffs League of Women Voters of South Dakota, League of Women Voters of the United States, Susan Randall, and Kathrine Fahey (collectively "Plaintiffs") brought this action against Governor Kristi Noem, Secretary of State Steve Barnett,[1] and Attorney General Mark Vargo (collectively "Defendants") in their official capacities claiming that Defendants' enforcement of South Dakota 2020 Senate Bill 180 ("SB 180") violates their rights under the United States and South Dakota Constitutions. Doc. 3. Defendants answered the amended

---

[1] Acting Secretary of State Monae Johnson will now be automatically substituted for out-going Secretary of State Steve Barnett under Federal Rule of Civil Procedure 25(d).

1

complaint and alleged five affirmative defenses. Doc. 12. Plaintiffs then filed a Motion to Strike Defendants' Affirmative Defenses and, in the Alternative, Motion for Judgment on the Pleadings as to Affirmative Defenses, Doc. 22, which Defendants oppose, Doc. 29. For the reasons explained below Plaintiffs' Motion to Strike Defendants' Affirmative Defenses and in the Alternative, Motion for Judgment on the Pleadings as to Affirmative Defenses, is granted in part and denied in part.

## I.   Facts and Procedural History

In their Amended Complaint, Plaintiffs allege that SB 180's 30-day residency requirement for petition circulators violates §§ 18 and 19 of article VI of the South Dakota Constitution and infringes on rights guaranteed to them by the First and Fourteenth Amendments of the United States Constitution. Doc. 3. The Defendants answered the Amended Complaint and pleaded five affirmative defenses: lack of standing; lack of jurisdiction due to ripeness; Eleventh Amendment Immunity; sovereign immunity; and that the action is barred by Article III, § 27 of the South Dakota Constitution and South Dakota Codified Law ("SDCL") §§ 21-32-17 and 21-32A-2. Doc. 12 at 2. Plaintiffs then timely filed their motion to strike these affirmative defenses, arguing that standing was not an affirmative defense, that there is an active controversy, that the Defendants are not immune from suit, and that the defenses are insufficiently pled. Doc. 22; Doc. 23.

Defendants counter that they have met the minimum pleading requirements for their affirmative defenses under Federal Rule of Civil Procedure 8. Doc. 29 at 2–3. Additionally, Defendants argue standing should not be stricken as it can be raised at any time, that the underlying claims are not ripe because there has been no harm, and that the immunity defenses are logically related to the allegations and raising these defenses cause Plaintiffs no prejudice. Id. at 3–6. Plaintiffs replied largely by reiterating their prior arguments. Doc. 31 at 3–7.

## II. Discussion

### A. Motion to Strike Affirmative Defenses

Rule 12 of the Federal Rules of Civil Procedure provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A court may act on its own motion or "on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(1)–(2). A district court enjoys "liberal discretion to strike pleadings under Rule 12(f)," but motions to strike are viewed with disfavor and are infrequently granted. BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007); see also Stanbury Law Firm, P.A. v. IRS, 221 F.3d 1059, 1063 (8th Cir. 2000) (per curiam); 5C Charles A. Wright et al., Federal Practice & Procedure § 1380 (3d ed. 2010). "A motion to strike a defense will be denied if the defense is sufficient as a matter of law or if it fairly presents a question of law or fact which the court ought to hear." Plan Pros, Inc. v. Joshua, Inc., CIV 13-4016, 2013 WL 4402357, at *1 (D.S.D. Aug. 14, 2013) (quoting Lunsford v. United States, 570 F.2d 221, 229 (8th Cir. 1977)). "Such motions should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." Poulos v. Summit Hotel Props., LLC, No. CIV 09-4062-RAL, 2010 WL 2034634, at *3 (D.S.D. May 21, 2010) (cleaned up and citation omitted).

"Rule 8(c) identifies a nonexhaustive list of affirmative defenses that must be pleaded in a response" to a complaint. Jones v. Bock, 549 U.S. 199, 212 (2007). Under Rule 8, defenses must be stated "in short and plain terms" and inconsistent pleading is allowed. Fed. R. Civ. P. 8(b)(1)(A), (d)(3). "If a party mistakenly designates a defense as a counterclaim, or a counterclaim

3

as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so." Fed. R. Civ. P. 8(c)(2); see also Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). When deciding whether to strike a pleading, "the court must view the pleadings in the light most favorable to the pleading party." Nasuti v. Walmart, Inc., No. 5:20-CV-5023-LLP, 2021 WL 3403666, at *1 (D.S.D. Aug. 4, 2021). Defendants of course "are under no obligation to prove their affirmative defenses in their answer." Abdulrazzak v. Smith, No 4:17-CV-4058-KES, 2018 WL 4625409, at *11 (D.S.D. Sept. 26, 2018).

### 1. Heightened Pleading Standard for Affirmative Defenses

The United States Court of Appeals for the Eighth Circuit has not addressed whether the pleading requirements iterated in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), apply to the assertion of affirmative defenses. Arbogast v. Healthcare Revenue Recovery Grp., 327 F.R.D. 267, 269 (E.D. Mo. 2018). District Courts within the Eighth Circuit have come to different conclusions as to whether Iqbal and Twombly apply to pleading affirmative defenses, though at least five different courts within the Eighth Circuit, including the District of South Dakota, have issued decisions declining to apply the heightened pleading requirements to affirmative defenses. See, e.g., Plan Pros, 2013 WL 4402357, at *2–3; Arbogast, 327 F.R.D. at 269–70; Summers Mfg. Co. Inc. v. Tri-County AG, LLC, 300 F. Supp. 3d 1025, 1044 (S.D. Iowa 2017); Infogroup, Inc. v. DatabaseLLC, 95 F. Supp. 3d 1170, 1192–94 (D. Neb. 2015); Wells Fargo & Co. v. United States, 750 F. Supp. 2d 1049, 1051–52 (D. Minn. 2010). But see Serv. Mgmt. Grp., LLC v. YouGov Am., Inc., No. 4:18-00819-CV-RK, 2020 WL 9171205, at *2 (W.D. Mo. Apr. 23, 2020) (applying the Iqbal and Twombly standards to the pleading of affirmative defenses).

Earlier this year, the Eighth Circuit stated that "[a]s long as 'an affirmative defense is raised in the trial court in a manner that does not result in unfair surprise, technical failure to comply with Rule 8(c) is not fatal.'" Crutcher v. MultiPlan, Inc., 22 F.4th 756, 766 (8th Cir. 2022) (quoting First Union Nat'l Bank v. Pictet Overseas Tr. Corp., 477 F.3d 616, 622 (8th Cir. 2007)). Similarly, in a case predating both Twombly and Iqbal, the Eighth Circuit stated that "[t]he rules do not require a party to plead every step of legal reasoning that may be raised in support of its affirmative defense; they only require a defendant to state in short and plain terms its defenses to a plaintiff's claims." Wisland v. Admiral Beverage Corp., 119 F.3d 733, 737 (8th Cir. 1997) (finding that statute of limitations defense was adequately pled by stating "applicable statute of limitation" and not citing any statute); see also Zotos v. Lindbergh Sch. Dist., 121 F.3d 356, 361 (8th Cir. 1997) ("While a limitations defense must be asserted in a responsive pleading, it need not be articulated with any rigorous degree of specificity, and is sufficiently raised for purposes of Rule 8 by its bare assertion." (cleaned up and citations omitted)). In the even earlier case of Barnwell & Hays, Inc. v. Sloan, the Eighth Circuit allowed an affirmative defense of waiver even when the specific terminology was not used. 564 F.2d 254, 255–56 (8th Cir. 1977) (per curiam). Specifically, the Eighth Circuit found that the "Rules were designed to liberalize pleading requirements . . . . To hold that defendant's answer was insufficient to inject the issue of waiver into the case would impose a requirement of undue formalism which is inconsistent with that liberal purpose." Id. at 256. See also Crutcher, 22 F.4th at 766 (allowing an affirmative defense that "includes the bare assertion of a defense" (cleaned up and citations omitted)).

Because the language of Federal Rule of Civil Procedure 8(b)(1)(A) contemplates affirmative defenses plead "in short and plain terms" and based on the existing Eighth Circuit precedent, this Court—consistent with the Plan Pros case from a fellow district judge within the

5

District of South Dakota—declines to extend the pleading requirements under Iqbal and Twombly to affirmative defenses. As such, Defendants have sufficiently plead their affirmative defenses.

### 2. Standing as a Defense

Defendants raise standing as an affirmative defense, claiming that there is an "absence of injury, causation, and redressability." Doc. 12 at 2. Plaintiffs argue that standing is not an affirmative defense and thus the defense should be struck. Doc. 23 at 3–4. Defendants respond that standing can be raised at any time and the case Plaintiffs cite to support their argument did not strike a standing defense, despite concluding standing is not an affirmative defense. Doc. 29 at 3–4.

Rule 8(c)'s list of affirmative defenses is non-exhaustive. Rule 8(c) requires the affirmative stating of "any avoidance or affirmative defense." This reference "encompasses two types of defensive allegations: those that admit the allegations of the complaint but suggest some other reason why there is no right of recovery, and those that concern allegations outside of the plaintiff's prima facie case that the defendant therefore cannot raise by a simple denial in the answer." Wright et al., supra, at § 1271; Black Hills Truck & Trailer, Inc. v. MAC Trailer Mfg., Inc., No. 13-CV-4113 (KES), 2017 WL 4236546, at *3 (D.S.D. Sept. 22, 2017); see also Fed. Deposit Ins. Corp. v. Main Hurdman, 655 F. Supp. 259, 262 (E.D. Cal. 1987) ("Affirmative defenses plead matters extraneous to the plaintiff's prima facie case, which deny plaintiff's right to recover, even if the allegations of the complaint are true") (citing Gomez v. Toledo, 446 U.S. 635, 640–41 (1980)). To find whether a defense falls into the "catchall" portion of Rule 8(c) "the court considers three factors: (1) the allocation of the burden of proof; (2) whether the defense denies or avoids the plaintiff's allegations; and (3) whether notice of the defense is required to

avoid surprise and undue prejudice to the plaintiff." Norman v. Ritter-Rittenhouse Corp., No. 08-CIV-4189-KES, 2010 WL 3282619, at *4 (D.S.D. Aug. 19, 2010).

Application of those three prongs point to standing not being an affirmative defense. First, rather than with a typical affirmative defense, the plaintiff bears the burden to prove standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Second, standing is "merely a denial of the plaintiff's jurisdictional allegations." Wright et al., supra, at § 1271 n.79 (citation omitted). Third, failing to raise standing in an answer does not risk unfair surprise or undue prejudice. After all, standing is a jurisdictional requirement that must be present at all stages of the litigation. Defenders of Wildlife, 504 U.S. at 561 (finding that jurisdictional elements "are not mere pleading requirements but rather an indispensable part of the plaintiff's case"). Unlike affirmative defenses that are waived if not alleged, standing cannot be waived. Wright et al., supra, at § 1271 n.2; Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc., No. 02 C 2523, 2003 WL 1720073, at *4 (N.D. Ill. Mar. 31, 2003). In short, lack of standing is not an affirmative defense.

Regardless, lack of standing can be raised by any party, or by the court, at any time during the litigation. Planned Parenthood Minn., N.D., S.D. v. Noem, 556 F. Supp. 3d 1017, 1022 (D.S.D. 2021). Despite lack of standing not being an affirmative defense, the standing requirement cannot be disregarded, and there is nothing wrong with raising lack of standing in an answer. Although this Court will strike the affirmative defense of standing, doing so does not eliminate the issue of standing from the case, nor preclude Defendants from arguing lack of standing in the future. See Perrin v. Papa John's Int'l, Inc., 114 F. Supp. 3d 707, 723 (E.D. Mo. 2015); Smith v. N. Star Charter Sch., Inc., No. CIV. 1:10-618 WBS, 2011 WL 3205280, at *2 (D. Idaho July 26, 2011). However, as the second half of this opinion and order details, the allegations of the Amended Complaint are sufficient at this time to establish standing.

### 3. Ripeness Defense

Defendants raise the affirmative defense of no jurisdiction due to a lack of "justiciable case or controversy that is ripe for adjudication." Doc. 12 at 2. Plaintiffs argue that they sufficiently alleged a ripe controversy. Doc. 23 at 4–5. Defendants respond that Plaintiffs failed to show facts that establish how the 30-day residency requirement impedes ballot initiatives, since the old requirement also required petition circulators to be residents. Doc. 29 at 5–6.

Related to standing as one of the justiciability doctrines, ripeness concerns whether a claim is being brought at the proper time. See Vogel v. Foth & Van Dyke Assocs., 266 F.3d 838, 840 (8th Cir. 2001). Claims are not ripe when they rest on "contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998) (cleaned up and citations omitted). Ripeness often overlaps with the injury-in-fact requirement of standing, particularly when plaintiffs challenge a statute that has yet to be enforced against them. Susan B. Anthony List v. Driehaus, 573 U.S. 149, 157 n.5 (2014) (stating that the issues of injury in fact and ripeness "boil[ed] down to the same question" in the preenforcement challenge before the Court (citation omitted)); Dermer v. Miami-Dade Cnty., 599 F.3d 1217, 1220 (11th Cir. 2010); see also Johnson v. Missouri, 142 F.3d 1087, 1090 n.4 (8th Cir. 1998) (explaining that the doctrines of ripeness and standing "are closely related in that each focuses on whether the harm asserted has matured sufficiently to warrant judicial intervention" (cleaned up and citation omitted)).

The second half of this opinion and order discusses the issue of standing and in turn ripeness. In short, ripeness as an affirmative defense might well go nowhere here, but the defense causes no unfair prejudice to Plaintiffs and is both relevant and colorable. See Poulos, 2010 WL 2034634, at *3. As such, this Court will not strike the affirmative defense of ripeness.

### 4. Immunity Defenses

Defendants raise various defenses of immunity under the Eleventh Amendment of the United States Constitution, Article III § 27 of the South Dakota Constitution, and the doctrine of sovereign immunity. Doc. 12 at 2–3. Plaintiffs move to strike these defenses arguing that they waste this Court's time as the Defendants were sued under "well-established case law." Doc. 23 at 5; Doc. 31 at 6. Defendants resist the motion to strike because the defenses have a significant connection to the controversy. Doc. 29 at 6.

Immunity is often a question that needs to be addressed in suits against government officials. Thus, such a question "presents a question of law or fact which the court ought to hear." Plan Pros, 2013 WL 4402357, at *1 (quoting Lunsford, 570 F.2d at 229). Immunity defenses have a relation and logical connection to the controversy. See Poulos, 2010 WL 2034634, at *3. There is no significant prejudice to allowing the immunity defenses to remain and be argued at a later time. See id. at *3. There is little reason at this early stage to strike such an affirmative defense that is not prejudicial to Plaintiffs, especially given the disfavor with which courts approach motions to strike. However, the defendants are sued only in their official capacities for non-monetary relief and as a way to challenge the constitutionality of a statute, so the immunity defenses may go nowhere. Nevertheless, this Court will not strike the affirmative defenses related to immunity from Defendants' Answer.

### B. Judgment on the Pleadings

On a motion for judgment on the pleadings under Rule 12(c), such as the alternative request of Plaintiffs, courts take the factual allegations pled by the nonmoving party as true and construe all inferences in the nonmoving party's favor but need not accept the nonmoving party's legal conclusions. Official Comm. of Unsecured Creditors v. Archdiocese of St. Paul & Minneapolis

(In re Archdiocese of St. Paul & Minneapolis), 888 F.3d 944, 950 (8th Cir. 2018); Schnuck Mkts., Inc. v. First Data Merch. Servs. Corp., 852 F.3d 732, 739 (8th Cir. 2017). Courts will grant judgment on the pleadings "only if the moving party clearly establishes that there are no material issues of fact and that it is entitled to judgment as a matter of law." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999).

> A judgment for the plaintiff on the pleadings cannot be sustained if the answer sets up a valid defense . . . nor can judgment on the pleadings be entered for a plaintiff where the defendants deny all allegations of wrongdoing and liability, and assert affirmative defenses. Allegations of a complaint that are specifically denied by the answer must be eliminated from consideration in determining a plaintiff's motion for judgment on the pleadings. . . . However, a court may decide a case on the pleadings where a defendant admits in its answer every factual allegation asserted in the petition and does not assert any additional facts by way of defense.

61A Am. Jur. 2d Pleading § 497 (Nov. 2022) (footnotes omitted). Although courts generally must ignore matters outside the pleadings when analyzing a Rule 12(c) motion, they "may consider some public records, materials that do not contradict the complaint, or materials that are necessarily embraced by the pleadings." Saterdalen v. Spencer, 725 F.3d 838, 841 (8th Cir. 2013) (cleaned up and citations omitted).

Defendants are the non-moving party and so their factual allegations are taken as true, with all reasonable factual inferences taken in their favor at this point. Defendants only fully admit to eight of the 99 paragraphs of the Amended Complaint, establishing this Court's authority, proper venue, the position and duties of Defendants, the passage of SB 180, the residency requirement of SB 180, and recent ballot measures filed with Secretary of State. Doc. 3 at ¶¶ 17–18, 28–30, 33–34, 36; Doc. 12 at ¶ 3. There are an additional 16 paragraphs that Defendants admit in part, including that Fahey and Randall cannot circulate petitions as non-residents, Doc. 3 at ¶¶ 47–48; Doc. 12 at ¶ 5, that 16,691 signatures are needed for an initiated measure or referred law and 33,921 signatures are required for an initiated constitutional amendment, Doc. 3 at ¶ 44; Doc. 12

at ¶ 6, and that some paragraphs contain accurate quotations, Doc. 3 at ¶¶ 3–4, 10–13, 32, 50, 71, 78, 86, 93; Doc. 12 at ¶ 7. All other paragraphs are denied, as are the other parts of paragraphs qualifiedly admitted. Doc. 12 at ¶ 2.

While some of the facts admitted in Defendants' Answer are significant, this is not a case where admissions in the answer leave the plaintiffs entitled to judgment. Defendants then allege their five affirmative defenses. Doc. 12 at ¶¶ 9–13. Plaintiffs only request judgment on the pleadings on the affirmative defenses. Doc. 22 at ¶ 7. A motion for judgment on the pleadings on affirmative defenses is unusual and can be awkward to evaluate when affirmative defenses only need to be plead "in short and plain terms" under Federal Rule of Civil Procedure 8(b)(1)(A). This Court is skeptical, for instance, that immunity defenses apply under the circumstances of a suit against officials in their official capacities to declare a restriction on petition circulators to be unconstitutional. However, this Court thinks it better that such an issue be briefed and decided on summary judgment or perhaps cross-motions for summary judgement given what appear to be primarily legal issues in this case.

### C. Justiciability: Standing and Ripeness

Defendants' standing defense and Plaintiffs' motion for judgment on the pleadings prompt analysis of the necessary element of standing. Standing, though not an affirmative defense, can be raised at any time during the litigation. Planned Parenthood Minn., N.D., S.D., 556 F. Supp. 3d at 1022. To have standing, a plaintiff invoking the judicial process must establish the following: (1) the plaintiff has suffered an "injury in fact" that is "concrete and particularized" as well as "actual or imminent" rather than "conjectural or hypothetical," (2) "a causal connection between the injury and the conduct complained of" exists, and (3) it is "likely," not merely "speculative," that the injury will be redressed by a favorable decision. Defenders of Wildlife, 504 U.S. at 560–

61 (cleaned up and citations omitted). Each element of standing must be supported with the same degree of evidence as any other matter on which a plaintiff bears the burden of proof at the particular stage of litigation. Id. at 561. At the pleading stage general factual allegations of injury resulting from the defendants' conduct may suffice. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990).

Defendants' pleading and Plaintiffs' motion also frame a question of ripeness. Ripeness focuses on whether the claim is brought at the proper time. Inst. for Free Speech v. Ravnsborg, 416 F. Supp. 3d 894, 902 (D.S.D. 2019). As such, "in many cases, ripeness coincides squarely with standing's injury in fact prong." Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1138 (9th Cir. 2000); Whitaker v. Cox, No. 4:21-CV-04010-RAL, 2021 WL 1788587, at *5 (D.S.D. May 4, 2021) (citing Thomas).

The two individual plaintiffs in this case are Susan Randall and Kathryn Fahey. Doc. 3. According to the Amended Complaint, Randall is no longer a South Dakota resident, but still owns property in South Dakota and is a member of the League of Women Voters. Id. at ¶ 26. Fahey is also a member of the League of Women Voters and not a resident of South Dakota. Id. at ¶ 27. Both individual plaintiffs claim they are harmed by SB 180's residency requirement because it prevents them from volunteering to help circulate petitions, as they otherwise would have if not for the new 30-day residency requirement. Id. at ¶¶ 47–48. The restriction of their ability to circulate petitions, they claim, infringes on their First Amendment rights. Id. at ¶¶ 4, 50. They claim this harm is caused by the 30-day residency requirement of SB 180, because without it, South Dakota residency can be established in one day under SDCL § 12-1-4, which is used to establish residency for voting. Id. at ¶¶ 32, 35, 47–48. Thus, if the 30-day requirement is struck

and residency for voting can be established in one day again, their injury would presumably be redressed. Id.; Doc. 31 at 4.

The Amended Complaint claims that "the League was unsuccessful in submitting a ballot question for an initiated constitutional amendment . . . in material part because SB 180 prevented the League from using out-of-state volunteers . . . ." Doc. 3 at ¶ 45. They also claim that the cost of hiring in-state "resident" circulators was unduly prohibitive[2] and that, but for SB 180, out-of-state volunteers, including the individual plaintiffs Randall and Fahey, would have come to South Dakota to help circulate petitions. Id. at ¶¶ 46–48. The organizational plaintiffs allege they were harmed because they were not able to use out-of-state volunteers to circulate petitions and obtaining 30,000 signatures on a petition by paying in-state resident petition circulators would cost approximately half a million dollars, preventing them and their members who wish to spearhead such petitions from doing so. Id. at ¶¶ 44–46.

Here, the individual plaintiffs have adequately alleged injury and, as such, a ripe dispute. "Petition circulation and the expression that surrounds it are each acts of expression that are considered 'core political speech.'" SD Voice v. Noem, 557 F. Supp. 3d 937, 941–42 (D.S.D. 2021) (quoting Buckley v. Am. Const. L. Found., Inc., 525 U.S. 182, 186 (1999)).

> The First Amendment is very concerned with a regulation that would make it more challenging to circulate petitions and collect the required number of signatures, or chill voter speech by somehow making a voter reluctant to sign a petition they otherwise might. Regulations of the petition circulation process often both restrict speech and make it more difficult to place the measure on the ballot.

---

[2] For 2022, the number of signatures required was 16,961 for an initiated measure petition or referred law petition and 33,921 for an initiated constitutional amendment. Doc. 3 at ¶ 44; Doc. 12 at ¶ 6. The Plaintiffs claim it could cost between $425,029 and $544,909 to run a 30,000-signature petition in the aftermath of SB 180. Id. at ¶ 46.

Id. at 942. The individual plaintiffs claim that SB 180's restrictions deviate from the typical voting residency requirement and thus deprive those citizens, and the individual plaintiffs, from participating in the circulating process. Additionally, both Randall and Fahey have asserted "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." Missourians for Fiscal Accountability v. Klahr, 830 F.3d 789, 794 (8th Cir. 2016) (cleaned up and citations omitted); see also SD Voice v. Noem, 380 F. Supp. 3d 939, 954 (D.S.D. 2019). Further, the organizational plaintiffs' inability to use volunteers from out of state creates what could be a prohibitive cost, approximately $425,029 or $554,909, for a non-profit to spearhead the circulation of a petition. Though the defendants dispute these allegations, the organizational plaintiffs have adequately alleged an injury and ripe dispute.

Plaintiffs claim that their injury is caused by the 30-day residency requirement because they could, under SDCL § 12-1-4, establish residency to be able to vote in South Dakota, but not circulate petitions. Under SDCL § 12-1-4 a voting residence is "the place in which a person has fixed his or her habitation and to which the person, whenever absent, intends to return." However, "[i]f a person moves to another state, or to any of the other territories, with the intention of making it his or her permanent home, the person thereby loses residence in [South Dakota]" though one going to another state "for a temporary purpose" has not lost their residence. SDCL § 12-1-4. Plaintiffs assert that Fahey and Randall would leave their homes in Michigan, come to South Dakota, create a place of habitation in South Dakota where they intend to return while they circulate petitions, and thus become residents. Defendants answer that this is not establishing residency because the individual plaintiffs do not intend to return to their South Dakota residence at all after they finish their brief stint circulating petitions, but only remain for a temporary time

before going back to their homes in Michigan. Thus, Defendants aver that the 30-day requirement does not cause them injury and the harm cannot be cured by a favorable ruling since the plaintiffs and their out-of-state volunteers would not be able to truly establish residency when they only intend to stay in South Dakota temporarily.

Regardless, SB 180 at least extends the time required to become a resident for petition circulators beyond what was previously required. This extension of the time required to establish residency, at least as alleged in the Amended Complaint, does cause harm to the plaintiffs because the extended time limits their ability to engage in the political speech of circulating a petition in South Dakota. If Fahey wanted to move to South Dakota to establish residency to vote she could do so within a day, yet she would remain unable to participate in the political speech related to petition circulation thereby impeding exercise of her First Amendment rights. Similarly, Randall could choose to return and establish residence at her South Dakota property, yet still be hampered in her participation in political speech due to the increase of time she would need to wait to become an eligible petition circulator under SB 180. Indeed, the Amended Complaint alleges that Randall, while at her South Dakota property, stayed in South Dakota for an extended time and wanted to participate in circulating petitions but could not due to SB 180. Doc. 3 at ¶ 47. Defendants admit that both Randall and Fahey as non-residents could not circulate petitions. Doc. 12 at ¶ 5.

Here the only thing challenged is the new 30-day residency requirement in the definition of "petition circulator." This definition is only a small part of SB 180 and, while it informs other areas, the residency requirement could be extracted, and the remainder of the definition could stand by itself.[3] Without the residency requirement, the old requirement, applying the standard

---

[3] The question of severability of a state statute is a question of state law. Leavitt v. Jane L., 518 U.S. 137, 139 (1996) (per curiam). In South Dakota:

articulated under SDCL § 12-1-4, presumably would govern.  As discussed above, the reinstatement of this shorter residency requirement conceivably could remedy the harm alleged by the individual plaintiffs in this case.  As such, the individual plaintiffs have established standing.

Plaintiffs League of Women Voters of South Dakota and League of Women Voters of the United States claim "organizational standing."  An association or party may have associational standing based on an injury to its members.  See Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977); Coal. for Sensible & Humane Sols. v. Wamser, 771 F.2d 395, 399 (8th Cir. 1985).  Organizational standing exists only if: (1) the association's members would independently meet the Article III standing requirements; (2) the interests the association seeks to protect are germane to the purpose of the organization; and (3) neither the claim asserted, nor the relief requested requires participation of individual members.  See Hunt, 432 U.S. at 343.  However, when no members of a party or group has at least attempted to take steps to satisfy the prerequisite to partake in an activity or benefit, and thus lacks standing, the party also lacks standing to sue on the members' behalf.  See Warth, 422 U.S. at 515–16.  In Warth, members of a homebuilders' association did not apply for a building permit or variance and did not attempt to take advantage of remedial processes.  Id. at 516.  "[T]o justify any relief the association must show that it has suffered harm, or that one or more of its members are injured."  Id. at 515.  When an association seeks prospective relief, such as declaratory or injunctive relief, it will have standing as a representative of its members only if it can show the existence of any injury to its members

---

> Unconstitutional provisions of a statute may be extracted and the remainder left intact. The "doctrine of separability" requires this court to uphold the remaining sections of a statute if they can stand by themselves and if it appears that the legislature would have intended the remainder to take effect without the invalidated section.

S. Dakota Educ. Ass'n/NEA By & Through Roberts v. Barnett, 582 N.W.2d 386, 394 (S.D. 1998) (cleaned up and citations omitted).

sufficient to allow the members to bring suit themselves. Id. at 516. As discussed above, the individual members of the organizational plaintiffs under the allegations of the Amended Complaint have standing.

The interests of the League of Women Voters are to "empower voters, defend democracy, and provide fair access to the ballot" which is fulfilled by "registering voters; organizing and leading local state ballot issue education programs; organizing non-partisan candidate forums; sponsoring legislative coffees throughout the state; running the non[-]partisan VOTE411.org website for South Dakota; and working with federal district courts to register newly naturalized citizens." Doc. 3 at ¶ 20. In addition to these goals, according to the Amended Complaint, the League of Women Voters also distributes educational materials relating to local and state elections and participates in securing signatures for various election petitions circulated in South Dakota, including those for candidacy, initiatives, and referenda. Id. at ¶¶ 23–24. These interests are tied directly to circulating petitions and are germane to the purpose of the organization.

Finally, based on the allegations of the Amended Complaint, the organizational plaintiffs appear to have standing even without the participation of the individual members. Individual members are required if the injury suffered would be "peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof." Warth, 422 U.S. at 515–16. Here, the plaintiffs request this Court to declare SB 180 unconstitutional, enjoin Defendants from enforcing the bill, and allow the recovery of attorney's fees and expenses. Doc. 3 at ¶¶ a-g. Such relief is not one that would require individual proof of the fact and extent of injury. As such, the individual members likely would not be required. Thus, the League of Women Voters of South Dakota and the League of Women Voters of the United States appear to have organizational standing under the allegations of the Amended Complaint.

### III. Conclusion

Therefore, it is hereby

ORDERED that Plaintiffs' Motion to Strike Defendants' Affirmative Defenses and in the Alternative, Motion for Judgment on the Pleadings as to Affirmative Defenses, Doc. 22, is granted in part and denied in part.

DATED this 12th day of December, 2022.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE